No. 22-15162

Panel decision filed June 7, 2023,
by Judges K. Lee, M. Smith, Jr., and D. Collins

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

**DAVID LOWERY ET AL.,**

*Plaintiffs-Appellees,*

v.

**RHAPSODY INTERNATIONAL, INC.,**

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of California, Hon. Jeffrey S. White,
No. 4:16-cv-01135-JSW

---

## APPELLEES' PETITION FOR REHEARING EN BANC

---

Sanford L. Michelman
Mona Z. Hanna
Reuben A. Ginsburg
Jennifer A. Mauri
MICHELMAN & ROBINSON, LLP
10880 Wilshire Blvd., 19th Floor
Los Angeles, CA 90024
Telephone: (310) 299-5500
Attorneys for Appellees
DAVID LOWERY et al.

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................ii

TABLE OF AUTHORITIES ............................................................. iii

I. INTRODUCTION AND RULE 35(b)(1) STATEMENT ........................1

II. FACTUAL AND PROCEDURAL SUMMARY....................................3

    A.    Rhapsody's Copyright Infringement.......................................3

    B.    Plaintiffs' Complaint ...........................................................3

    C.    The Settlement....................................................................3

    D.    Plaintiffs' Attorney Fee Motion and the Fee Award .............4

    E.    The Appeal .........................................................................6

    F.    The Panel Decision..............................................................6

V. ARGUMENT .............................................................................7

    A.    Attorney Fee Awards Under the Copyright Act Need Not
        Be Proportionate to the Monetary Recovery .........................7

        1.    Attorney Fee Awards Serve the Purposes of the
            Copyright Act .............................................................7

        2.    The District Court Has Broad Discretion to Award
            a Fully Compensatory Fee Unrestricted by Any
            Rule of Proportionality.................................................9

        3.    The Panel's Reliance on *Fogerty* to Distinguish Fee
            Awards Under Civil Rights Laws Is Inapt.................15

    B.    The Appropriate Measure of Class Benefit Is the Amount
        Made Available to the Class Rather Than the Amount
        Actually Claimed...............................................................17

    C.    The Settlement Value Includes the Attorney Fee Award....20

VII. CONCLUSION ........................................................................22

Certificate of Compliance.........................................................23

Certificate of Service ...............................................................24

Attachment A (Panel Decision)...............................................25

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Anderson v. AB Painting and Sandblasting Inc.*,
   578 F.3d 542 (7th Cir. 2009) .................................................... 11, 14, 15

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ........................................................... 2, 17, 18, 19

*Bywaters v. U.S.*,
   670 F.3d 1221 (Fed. Cir. 2012) .......................................................... 11

*Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*,
   897 F.3d 825 (7th Cir. 2018) ............................................................. 19

*Christensen v. Stevedoring Services of America*,
   557 F.3d 1049 (9th Cir. 2009) ........................................................... 11

*City of Burlington v. Dague*,
   505 U.S. 557 (1992) ........................................................................ 11

*City of Riverside v. Rivera*,
   477 U.S. 561, 576-577 (1986) ....................................... 9, 10, 12, 14, 15

*Cooper v. Retrieval-Masters Creditors Bureau, Inc.*,
   42 F.4th 675 (7th Cir. 2022) ....................................................... 11, 15

*Fisher v. SD Protection Inc.*,
   948 F.3d 593 (2nd Cir. 2020) ........................................................... 11

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994) ................................................ 7, 8, 13, 15, 16, 17

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
   886 F.2d 1545 (9th Cir. 1989) ...................................................... 8, 21

*Gascho v. Global Fitness Holdings, LLC*,
   822 F.3d 269 (6th Cir. 2016) ............................................................ 19

*Glacier Films (USA), Inc. v. Turchin*,
   896 F.3d 1033 (9th Cir. 2018) ............................................. 8, 9, 20, 21

*Independent Federation of Flight Attendants v. Zipes*,
    491 U.S. 754 (1989) ............................................................... 11

*Kim v. Allison*,
    8 F.4th 1170 (9th Cir. 2021) ............................................... 19

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    579 U.S. 197 (2016) ...................................................... 4, 8, 9

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2nd Cir. 2007) ............................................. 18

*Northeast Women's Center v. McMonagle*,
    889 F.2d 466 (3rd Cir. 1989) ....................................... 11, 14

*Perdue v. Kenny A.*,
    559 U.S. 542 (2010) ............................................................ 11

*Russell v. Price*,
    612 F.2d 1123 (9th Cir. 1979) ......................... 1, 10, 12, 13

*Shirrod v. Director, OWCP*,
    809 F.3d 1082 (9th Cir. 2015) ........................................... 11

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ........................................... 18

*Spooner v. EEN, Inc.*,
    644 F.3d 62 (1st Cir. 2011) ................................... 8, 9, 10, 12

*U.S. Football League v. National Football League*,
    887 F.2d 408 (2nd Cir. 1989) ...................................... 10, 13

*United Auto. Workers Local 259 Social Sec. Dept. v. Metro Auto Center*,
    501 F.3d 283 (3rd Cir. 2007) ............................................. 11

*Vargas v. Howell*,
    949 F.3d 1188 (9th Cir. 2020) ................................. 2, 20, 21

*Waters v. Intern. Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) ......................................... 19

*Williams v. MGM-Pathe Communications Co.*,
129 F.3d 1026 (9th Cir. 1997) .................................................. 2, 18, 19

**Statutes**

15 U.S.C. § 15 ...................................................................... 10, 11, 13

15 U.S.C. § 1692 ............................................................................ 11

17 U.S.C. § 106 ............................................................................... 3

17 U.S.C. § 116 .............................................................................. 13

17 U.S.C. § 505 ................................................................... *passim*

18 U.S.C. § 1964 ..................................................................... 11, 14

29 U.S.C. § 216 .............................................................................. 11

29 U.S.C. § 1132 ............................................................................ 11

42 U.S.C. § 1988 ................................................................ 9, 11, 14, 15

Copyright Act of 1909 ................................................................ 1, 10, 13

ERISA ...................................................................................... 10, 14

Fair Debt Collection Practices Act ............................................................ 10

Fair Labor Standards Act ......................................................................... 10

RICO ....................................................................................... 10, 14

**Court Rules**

Fed. R. Civ. P. 23 ............................................................................... 1, 7

# I.  INTRODUCTION AND RULE 35(b)(1) STATEMENT

The panel holds a $1.7 million attorney fee award in a copyright infringement class action is unreasonable under Fed. R. Civ. P. 23 because it is more than 30 times larger than the $52,841.05 paid to class members in settlement.  The Opinion holds the award is unreasonable under section 505 of the Copyright Act of 1976, 17 U.S.C. § 505 (section 505), for the same reason and states a fee award under the act must be proportional to the class benefit.  The Opinion states copyright cases are unlike civil rights cases, where statutory fee awards need not be proportionate to the monetary recovery.

A rehearing is warranted because this case involves a question of exceptional importance: whether a fee award under section 505 must be proportionate to the monetary recovery.  Appellate courts applying a wide range of federal fee-shifting statutes not involving civil rights, including section 505, have held a fee award need not be proportionate to the amount recovered.  The Opinion conflicts with those authorities and with *Russell v. Price*, 612 F.2d 1123 (9th Cir. 1979) (*Russell*), a Ninth Circuit decision applying a virtually identical fee-shifting statute under the Copyright Act of 1909.

Lodestar fee awards under fee-shifting statutes, including section 505, need not be proportionate to the monetary recovery. Civil rights fee-shifting statutes are not unique in this regard. When Congress authorizes an award of reasonable attorney fees, its intent is to encourage the pursuit of socially beneficial litigation by authorizing an award that compensates attorneys for all time reasonably expended.

A rehearing is also warranted to address another question of exceptional importance: whether the appropriate measure of class benefit is the amount made available to the class or the amount claimed. The Opinion conflicts with *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) (*Boeing*), *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (*Williams*), and other appellate decisions.

Finally, a rehearing is warranted because the Opinion conflicts with *Vargas v. Howell*, 949 F.3d 1188 (9th Cir. 2020) (*Vargas*), which held when a settlement expressly contemplates an attorney fee award in an amount to be determined by the court, the settlement value includes the amount of fees awarded.

## II.  FACTUAL AND PROCEDURAL SUMMARY

### A.    Rhapsody's Copyright Infringement

Owners of musical works have exclusive rights to reproduce and distribute their copyrighted music pursuant to section 106 of the Copyright Act, 17 U.S.C. § 106.  Anyone else must obtain a license before reproducing or distributing the music.  Rhapsody made copyrighted music available to users of its digital music service without obtaining required licenses.  (Dkt. 1:8)

### B.    Plaintiffs' Complaint

Plaintiffs filed a class action complaint against Rhapsody in March 2016 alleging copyright infringement, seeking statutory and compensatory damages and injunctive relief.  (Dkt. 1:10, 15, 16)

### C.    The Settlement

The parties entered into a settlement in January 2019, providing for class members to receive compensation for musical works played on Rhapsody's streaming music service without a license.  (ER-146)  The maximum amount payable for claims under the settlement was $10 million, but if any of representations or warranties regarding

Rhapsody's finances were false, the maximum payable would be
$20 million. (ER-146, 156–157) Rhapsody also agreed to establish an
Artist Advisory Board. (ER-152)

The agreement stated, "The parties agree to submit the issue of
Plaintiffs' counsel's reasonable attorneys' fees and costs to the Court."
(ER-155) The court approved the settlement in December 2020.
(Dkt. 243)

## D.    Plaintiffs' Attorney Fee Motion and the Fee Award

Plaintiffs filed a fee motion in June 2020 requesting a lodestar of
$2,132,418.90 and a 2.87 multiplier. (Dkt. 208:10–11) Rhapsody
argued the amount requested was unreasonable and the hours billed
were excessive and requested a negative multiplier. (Dkt. 210:9–16)
The court referred the matter to a magistrate judge. (Dkt. 242; ER-31)

The magistrate filed a report and recommendation stating the
administrator had distributed a total of $52,841.05 to claimants. (ER-7)
Citing *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204 (2016)
(*Kirtsaeng*), the magistrate listed several factors to consider in
awarding fees under the Copyright Act, including the " 'objective
reasonableness' " of the opposing party's litigation position and

4

" 'frivolousness, motivation, . . . the need in particular circumstances to advance considerations of compensation and deterrence,' and 'all the circumstances of a case on their own terms.' "  (ER-8)

The magistrate concluded a fee award was warranted under section 505 and an award would serve the purposes of the Copyright Act.  (ER-8–9)  The magistrate recommended reducing the number of hours claimed and calculated a lodestar of $1,720,441.59.  (ER-14–16)  The magistrate rejected plaintiffs' requested multiplier, applied a percentage-of-recovery cross-check, and applied a negative multiplier of 0.5, resulting in a fee award of $860,220.79.  (ER-17–22)

Both sides moved for de novo determination of attorney fees.  (Dkt. 259, 260)  Considering the matter de novo, the district court adopted the magistrate's recommendation except for a negative multiplier.  The court agreed with the magistrate's analysis on the number of hours reasonably expended and adopted the adjusted lodestar figure of $1,720,441.57.  (ER-4)  The court awarded plaintiffs $1,720,441.57 in fees and $13,162 in costs.  (ER-3–5)

**E.     The Appeal**

Rhapsody appealed from the order awarding attorney fees, arguing (1) the court erred by awarding fees that do not correspond with the class benefit, and (2) the court should have applied a negative multiplier.  (Op. br. 17-25)  Rhapsody expressly did not challenge the court's findings on the number of hours reasonably expended or counsel's reasonable rates (Op. br. 13, n. 5); that is, Rhapsody did not dispute the lodestar calculation but only the failure to apply a negative multiplier.

**F.     The Panel Decision**

The panel filed its Opinion on June 7, 2023, reversing the fee award with directions to calculate the settlement's actual value to class members "and then award attorneys' fees proportional and reasonable to the benefit received by the class."  Op. 17.

The Opinion states (1) the court erred by failing to calculate the settlement value, Op. 12; (2) the settlement value is the actual or realistically anticipated class recovery rather than the amount made available to the class, Op. 12; (3) the court should consider performing a percentage-of-recovery cross-check, Op. 14-15; (4) the fee award is

6

unreasonable under Rule 23 because it is disproportionate to the class recovery, Op. 15-16; and (5) the award is unreasonable under the Copyright Act for the same reason, Op. 16-17.[1]

The Opinion distinguishes civil rights cases upholding fee awards exceeding the monetary recovery. Op. 16-17. The Opinion states unlike fees awarded in civil rights cases, fees awarded under the Copyright Act generally must be proportional to the class benefit unless the "copyright infringement litigation leads to substantial nonmonetary relief or provides a meaningful benefit to society." Op. 17.

# V. ARGUMENT

## A. Attorney Fee Awards Under the Copyright Act Need Not Be Proportionate to the Monetary Recovery

### 1. Attorney Fee Awards Serve the Purposes of the Copyright Act

The primary objective of the Copyright Act is to encourage the production of original artistic works for the public good. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 524 (1994) (*Fogerty*). "[C]opyright law

---

[1] The evidence in the record does not support the statement on page 16 of the Opinion, "It was clear by April 2018 that Rhapsody's NMPA settlement would likely gut the putative class here so that this lawsuit would yield only minimal financial recovery."

ultimately serves the purpose of enriching the general public through access to creative works." *Id.* at 527; accord, *Kirtsaeng*, 579 U.S. at 204. Attorney fee awards serve this purpose by encouraging private enforcement and deterring copyright infringement. *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1556 (9th Cir. 1989) (*Frank*).

"Attorneys' fees are made available to prevailing parties in copyright cases in order to 'vindicat[e] the overriding purpose of the Copyright Act: to encourage the production of original literary, artistic, and musical expression for the public good.'" *Spooner v. EEN, Inc.*, 644 F.3d 62, 69 (1st Cir. 2011) (*Spooner*). "The holder of a copyright that has obviously been infringed has good reason to bring and maintain a suit even if the damages at stake are small," and doing so "promote[s] the Copyright Act's purposes." *Kirtsaeng*, 579 U.S. at 205. " '[W]illful [copyright] infringements involving small amounts of money' may not be 'adequately deterred' absent an award of fees." *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1039 (9th Cir. 2018) (*Glacier*).

A rule generally limiting attorney fees to the amount recovered would frustrate the purposes of the Copyright Act and undermine the

deterrent effect of copyright litigation. *Spooner*, 644 F.3d at 69; *see Glacier*, 896 F.3d at 1039 ("the district court did not appropriately weigh the interests of deterrence and compensation").

## 2. The District Court Has Broad Discretion to Award a Fully Compensatory Fee Unrestricted by Any Rule of Proportionality

A district court has "broad leeway" in awarding attorney fees under section 505. *Kirtsaeng*, 579 U.S. at 202. "The statutory language … 'clearly connotes discretion,' and eschews any 'precise rule or formula' for awarding fees." *Id.* "[Section] 505 grants courts wide latitude to award attorney's fees based on the totality of circumstances." *Id.* at 203.

Section 505 reflects Congress's determination that copyright infringement litigation confers a public benefit, justifying a fee award to the prevailing party that fully compensates counsel for all time reasonably expended.

Congress enacts fee-shifting statutes to encourage lawyers to pursue socially beneficial litigation despite the potentially low monetary recovery. *City of Riverside v. Rivera*, 477 U.S. 561, 576-577 (1986) (plur. opn.) (*Riverside*) (fee award under 42 U.S.C. § 1988); *Spooner*,

9

644 F.3d at 69 (Copyright Act). "Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief." *Riverside*, at 575.

> A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting § 1988. Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case.

*Riverside*, 477 U.S. at 578.

This reasoning is not limited to civil rights cases. It also applies to other socially beneficial litigation for which Congress has authorized a fee award, including copyright infringement actions. Accordingly, courts have held that fee awards need not be proportionate to the amount recovered in cases under the Copyright Act, former Copyright Act of 1909, Clayton Act, ERISA, Fair Debt Collection Practices Act (FDCPA), Fair Labor Standards Act (FLSA), and RICO, among other acts. *Spooner*, 644 F.3d at 69 (Copyright Act); *Russell*, 612 F.2d at 1132 (Copyright Act of 1909); *U.S. Football League v. National Football*

*League*, 887 F.2d 408 (2nd Cir. 1989) (*USFL*) (Clayton Act); *United Auto. Workers Local 259 Social Sec. Dept. v. Metro Auto Center*, 501 F.3d 283 (3rd Cir. 2007) (ERISA); *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009) (*Anderson*) (ERISA); *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675, 687 (7th Cir. 2022) (*Cooper*) (FDCPA); *Fisher v. SD Protection Inc.*, 948 F.3d 593 (2nd Cir. 2020) (FLSA); *Northeast Women's Center v. McMonagle*, 889 F.2d 466 (3rd Cir. 1989) (*NWC*) (RICO).[2]

---

[2] The fee-shifting provisions in 42 U.S.C. § 1988(b) and section 505 both provide for an award of a "reasonable attorney's fee." The fee-shifting provisions in the other acts noted above use the same language. 15 U.S.C. § 15(a) (Clayton Act); 29 U.S.C. § 1132(g)(2)(D) (ERISA); 15 U.S.C. § 1692k(a)(3) (FDCPA), 29 U.S.C. § 216(b) (FLSA); 18 U.S.C. § 1964(c) (RICO).

"[F]ee-shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike." *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754, 759, n. 2 (1989). Specifically, the language "reasonable attorney's fee" has a uniform meaning in all federal fee-shifting statutes. *Shirrod v. Director, OWCP*, 809 F.3d 1082, 1086 (9th Cir. 2015); *Christensen v. Stevedoring Services of America*, 557 F.3d 1049, 1052 (9th Cir. 2009); *see City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("our case law construing what is a 'reasonable' fee applies uniformly to all [federal fee-shifting statutes]"); *Bywaters v. U.S.*, 670 F.3d 1221, 1228 (Fed. Cir. 2012) ("the Supreme Court has advised that all federal fee-shifting statutes calling for an award of 'reasonable' attorneys' fee should be construed 'uniformly' ").

"A 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010).

The First Circuit in *Spooner*, 644 F.3d 62, affirmed a fee award more than twice the damage award based on section 505, stating, "It is obvious that the amount of fees requested by plaintiff is quite large in relation to the statutory damages recovered …. The law, however, does not demand strict proportionality between fees and damages." *Spooner*, at 69, citing *Riverside*, 477 U.S. at 578.

> This rule makes eminently good sense: a strict proportionality requirement would overlook entirely the value of other important litigation goals. That kind of rigidity would frustrate the core purpose that underlies many fee-shifting statutes, which are designed to afford private parties the opportunity to vindicate rights that serve some broad public good. *See City of Riverside*, 477 U.S. at 578. Copyright cases are a prime example of a situation in which obtaining non-monetary relief or establishing a principle may be worth considerably more than the damages recovered. [¶] The defendants assert that this case does not involve any issues of significant societal importance. That assertion rings hollow. Attorneys' fees are made available to prevailing parties in copyright cases in order to "vindicat[e] the overriding purpose of the Copyright Act: to encourage the production of original literary, artistic, and musical expression for the public good." [Citation.] The plaintiff's suit serves precisely this purpose.

> *Spooner*, 644 F.3d at 69.

The Ninth Circuit in *Russell*, 612 F.2d 1123, affirmed a fee award more than 2½ times the damages award based on a fee-shifting

provision in the Copyright Act of 1909, former 17 U.S.C. § 116.[3] The fee award appropriately compensated counsel for all time reasonably expended. "While the $10,000 awarded plaintiffs in fees might be considered generous when compared with the amount recovered in damages, the fees do not appear unreasonable considering the amount of work necessitated and performed and the skill employed." *Russell*, at 1132.

The Second Circuit in *USFL*, 887 F.2d 408, stated regarding a fee award under a Clayton Act provision requiring the court to award a "reasonable attorney's fee," 15 U.S.C. § 15(a), "What is important is encouraging the detection and cessation of anticompetitive behavior, not the amount of damages found. Because of the importance of the policy of encouraging private parties to bring antitrust actions, recovery of their reasonable attorney's fees must be sustained regardless of the amount of damages awarded." *USFL*, at 412.

---

[3] The fee provision in section 505 ("Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs") is virtually identical to the fee provision in section 116 of the former Copyright Act of 1909 ("and the court may award to the prevailing party a reasonable attorney's fee as part of the costs"), as noted in *Fogerty*, 510 U.S. at 523.

The Third Circuit in *NWC*, 889 F.2d 466, rejected the argument that the reasons not to impose a rule of proportionality are unique to civil rights cases. A civil RICO fee-shifting provision, 18 U.S.C. § 1964(c), authorizes an award of a "reasonable attorney's fee" to a person injured by a violation. Like 42 U.S.C. § 1988, the RICO provision "was designed to encourage private litigants to promote the policies underlying the substantive legislation." *NWC*, at 474. "Although § 1988 may reflect Congress' particular solicitude toward civil rights litigants, we see nothing in the language or the legislative history of either § 1988 or § 1964(c) to support the application of a proportionality rule in the latter, but not the former." *Id*. *NWC* concluded the court properly refused to reduce the lodestar fee award based on proportionality. *Id*. at 475.

The Seventh Circuit in *Anderson*, 578 F.3d 542, rejected a rule of proportionality for fee awards under ERISA, stating the reasoning of *Riverside*, 477 U.S. 561, applies to fee-shifting statutes generally.

> This seems to us the only logical position, considering the purpose of attorney's fees statutes. Fee-shifting provisions signal Congress' intent that violations of particular laws be punished, and not just large violations that would already be checked through the incentives of the American Rule....
> [¶] Because Congress wants even small violations of certain

> laws to be checked through private litigation and because
> litigation is expensive, it is no surprise that the cost to
> pursue a contested claim will often exceed the amount in
> controversy.  [Citation.]  That is the whole point of fee-
> shifting—it allows plaintiffs to bring those types of cases ….

*Anderson*, 578 F.3d at 545.[4]

The Opinion's proportionality requirement conflicts with these decisions.  The Opinion would frustrate the ability of copyright owners to seek redress in the courts based on important rights established by Congress and undermine the purposes of the Copyright Act.  If the Opinion's reasoning were applied to other fee-shifting statutes not involving civil rights, private enforcement of those acts would also suffer.

### 3.    The Panel's Reliance on *Fogerty* to Distinguish Fee Awards Under Civil Rights Laws Is Inapt

The Opinion concludes the reasoning of *Riverside*, 477 U.S. 561, is inapplicable to attorney fee awards under the Copyright Act.  Citing *Fogerty*, 510 U.S. 517, the Opinion states the " 'goals and objectives' " of section 505 differ from those of 42 U.S.C. § 1988, so "the Supreme Court has rejected an analogy to a civil rights fee-shifting statute when

---

[4]      *See also Cooper*, 42 F.4th at 687 ("the 'fee awards "should not be linked mechanically to a plaintiff's [damages] award" ' ").

interpreting the Copyright Act's fee-shifting provision."  Op. 17.
Respectfully, this is faulty reasoning.

*Fogerty*, 510 U.S. 517, addressed the standard for determining
whether a fee award under the Copyright Act in favor of a prevailing
defendant is proper.  *Fogerty* did not discuss whether a rule of
proportionality applies and did not reject any analogy to civil rights
cases in this regard.

*Fogerty*, 510 U.S. 517, held prevailing plaintiffs and prevailing
defendants must be treated alike under section 505, disapproving a
"dual standard" that allowed prevailing plaintiffs to recover fees as a
matter of course while requiring prevailing defendants to show the suit
was frivolous or brought in bad faith.  *Fogerty*, at 534.  *Fogerty*
explained the legislative history of civil rights statutes indicates an
intent to apply a dual standard, but the legislative history of
section 505 does not.  *Fogerty*, at 523.

*Fogerty* stated the "goals and objectives of the two Acts" also
differ.  *Fogerty*, 510 U.S. at 524.  Civil rights plaintiffs are often
impecunious and cannot afford to litigate their claims against better-
funded defendants.  "Congress sought to redress this balance in part,

16

and to provide incentives for the bringing of meritorious lawsuits, by treating successful plaintiffs more favorably than successful defendants in terms of the award of attorney's fees." *Id.* at 524. In contrast, in copyright infringement actions both plaintiffs and defendants may own copyrights, *id.* at 526, the parties "can run the gamut from corporate behemoths to starving artists," *id*. at 524, and the successful defense of a copyright infringement action can further the policies of the Copyright Act as much as a successful prosecution can. *Fogerty*, at 527.

*Fogerty* therefore rejected the "dual standard." *Fogerty*, 510 U.S. at 534. *Fogerty* did not address whether a fee award under the Copyright Act should be proportionate to the amount recovered, and *Fogerty*'s reasoning is inapplicable. *Fogerty* rejected the "dual standard" for fee awards under the Copyright Act but did not reject an analogy to civil rights cases for other purposes.

**B.    The Appropriate Measure of Class Benefit Is the Amount Made Available to the Class Rather Than the Amount Actually Claimed**

The fee award is proportionate to the class benefit when the class benefit is properly viewed as the amount made available to the class. *Boeing*, 444 U.S. 472, held the district court properly awarded fees to

class counsel as a percentage of the common fund even though the defendant had a colorable claim to recover unclaimed funds. *Id*. at 480-482. The Supreme Court rejected the argument the award should be based on only the amount claimed by class members. *Id*. at 477. The class members' "right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." *Id*. at 480.

The Ninth Circuit in *Williams*, 129 F.3d 1026, held the district court abused its discretion by awarding fees based on a percentage of the claims made rather than a percentage of the gross settlement fund or awarding the lodestar, even though the defendant would recover any unclaimed funds. *Id*. at 1027, citing *Boeing*, 444 U.S. 472; see also *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) (district court properly awarded fees as a percentage of the entire common fund rather than only the claimed amount).

Other Courts of Appeals have similarly held a fee award should be based on a percentage of the amount made available to the class, *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2nd Cir.

2007) ("An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not"), or that it was not an abuse of discretion to award fees as a percentage of the amount made available to the class rather than only the amount claimed, *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1295-1298 (11th Cir. 1999); see also *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 283-288 (6th Cir. 2016); *but see Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 833-834 (7th Cir. 2018) (contra).[5]

The Opinion conflicts with these authorities. It states *Boeing*, 444 U.S. 472, is distinguishable because the defendant was liable for a " 'sum certain' " and that amount was not " 'contingent upon the presentation of individual claims.' " Op. 13. But *Boeing* stated a fee award based on the entire common fund was proper even if the defendant later established a right to recover unclaimed funds. *Id.* at 482. The Opinion cites *Williams*, 129 F.3d 1026, on another point and

---

[5]     The majority opinion in *Kim v. Allison*, 8 F.4th 1170, (9th Cir. 2021) touched on this issue in the context of a collusive settlement but did not definitively address the issue.

19

does not address its holding that fees should be based on a percentage of the gross fund.  Op. 14.

## C.    The Settlement Value Includes the Attorney Fee Award

The Opinion states the value of the settlement includes the $52,841 paid to class members plus the value of "any other benefits to the class."  The panel compares that amount to the $1.7 million fee award, finds the fee award unreasonable, and directs the district court on remand to determine the settlement value and "award attorneys' fees proportional to the benefit received by the class."  (Op. 10, 14, 17.)

Because the settlement expressly contemplated a fee award in an amount to be determined by the court (ER-155), the settlement value includes the fee award.  The Ninth Circuit so held in *Vargas*, 949 F.3d at 1197:[6]

> In addition, the district court's comparison of the recovery and the fees overlooked that the recovery was the product of a settlement that expressly contemplated an award of fees. The court was therefore wrong to suggest that Terry should have "realiz[ed] the value of his client's case was $99,999 and spent fewer hours working on it.  In fact, the value of the settlement was $99,999 *plus fees.*

---

[6]    *See also Glacier*, 896 F.3d at 1039 (plaintiff's potential attorney fee recovery contributed to the degree of success).

As here, the settlement agreement in *Vargas*, 949 F.3d 1188, provided the plaintiff was entitled to seek a reasonable attorney fee award as the prevailing party, but the defendant reserved the right to oppose that request. *Id*. at 1193.

The fee award is proportionate to the class benefit when the fee award is properly considered part of the settlement value. By failing to include the fee award as part of the settlement value, the Opinion directly conflicts with *Vargas*, 949 F.3d 1188.

Moreover, substantial attorney fee awards deter copyright infringement, and that deterrent effect warrants consideration in the determination of a reasonable fee. *Glacier*, 896 F.3d at 1039; *Frank*, 886 F.2d at 1556.

# VII.  CONCLUSION

For the foregoing reasons, the Court should grant a rehearing en banc.

DATED:    June 21, 2023          Respectfully submitted,

                                 MICHELMAN & ROBINSON, LLP
                                 Sanford L. Michelman
                                 Mona Z. Hanna
                                 Reuben A. Ginsburg
                                 Jennifer A. Mauri

                                 s/Reuben Ginsburg
                                 Attorneys for Appellees
                                 David Lowery, Victor Krummenacher,
                                 Greg Lisher, and David Faragher

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

**9th Cir. Case Number:** 22-15162

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached

petition for rehearing en banc is:

[X] Prepared in a format, typeface, and type style that complies with

Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of**

**words:** 4,198.

*(Petitions and responses must not exceed 4,200 words)*

**OR**

[ ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed

15 pages.

**Signature:** s/Reuben Ginsburg          **Date:** June 21, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing Appellees' Petition for Rehearing En Banc with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system on June 21, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

**Signature:** <u>s/Reuben Ginsburg</u>          **Date:** June 21, 2023


# ATTACHMENT A (PANEL DECISION)

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID LOWERY; VICTOR KRUMMENACHER; GREG LISHER; DAVID FARAGHER, individually and on behalf of themselves and all others similarly situated, | No. 22-15162 <br><br> D.C. No. 4:16-cv-01135-JSW |
| *Plaintiffs-Appellees,* | |
| v. | OPINION |
| RHAPSODY INTERNATIONAL, INC., a Delaware corporation, | |
| *Defendant-Appellant.* | |

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted December 9, 2022
Pasadena, California

Filed June 7, 2023

Before: Milan D. Smith, Jr., Daniel P. Collins, and
Kenneth K. Lee, Circuit Judges.

Opinion by Judge Lee

## SUMMARY[*]

### Copyright / Attorneys' Fees

The panel reversed the district court's award of attorneys' fees to plaintiffs' counsel in a copyright action and remanded.

Counsel filed a class action lawsuit on behalf of copyright holders of musical compositions and recovered a little over $50,000 for the class members from defendant Rhapsody International, Inc. (now rebranded as Napster), a music streaming service. The class members obtained no meaningful injunctive or nonmonetary relief in the settlement of their action. The district court nonetheless authorized $1.7 in attorneys' fees under the "lodestar" method.

Reversing, the panel held that the touchstone for determining the reasonableness of attorneys' fees in a class action under Federal Rule of Civil Procedure 23 is the benefit to the class. Here, the benefit was minimal. The panel held that the district court erred in failing to calculate the settlement's actual benefit to the class members who submitted settlement claims, as opposed to a hypothetical $20 million cap agreed on by the parties.

The panel held that district courts awarding attorneys' fees in class actions under the Copyright Act must still generally consider the proportion between the award and the benefit to the class to ensure that the award is

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

reasonable. The panel recognized that a fee award may exceed the monetary benefit provided to the class in certain copyright cases, such as when a copyright infringement litigation leads to substantial nonmonetary relief or provides a meaningful benefit to society, but this was not such a case.

The panel instructed that, on remand, the district court should rigorously evaluate the actual benefit provided to the class and award reasonable attorneys' fees considering that benefit. In determining the value of the "claims-made" class action settlement, the district court should consider its actual or anticipated value to the class members, not the maximum amount that hypothetically could have been paid to the class. The district court should also consider engaging in a "cross-check" analysis to ensure that the fees are reasonably proportional to the benefit received by the class members.

---

## COUNSEL

Karin Kramer (argued), Quinn Emanuel Urquhart & Sullivan LLP, San Francisco, California; William B. Adams, Quinn Emanuel Urquhart & Sullivan LLP, New York, New York; Thomas C. Rubin, Quinn Emanuel Urquhart & Sullivan LLP, Seattle, Washington; for Defendant-Appellant.

Reuben A. Ginsburg (argued), Sanford L. Michelman, Mona Z. Hanna, and Jennifer A. Mauri, Michelman & Robinson LLP, Los Angeles, California, for Plaintiffs-Appellees.

## OPINION

LEE, Circuit Judge:

This case will likely make the average person shake her head in disbelief: the plaintiffs' lawyers filed a class action lawsuit on behalf of copyright holders of musical compositions and ended up recovering a little over $50,000 for the class members. The lawyers then asked the court to award them $6 million in legal fees. And the court authorized $1.7 million in legal fees—more than thirty times the amount that the class received.

We reverse and remand. The touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class. It matters little that the plaintiffs' counsel may have poured their blood, sweat, and tears into a case if they end up merely spinning wheels on behalf of the class. What matters most is the result for the class members. Here, the benefit from this litigation was minimal: the class received a measly $52,841.05 and obtained no meaningful injunctive or nonmonetary relief.

On remand, the district court should rigorously evaluate the actual benefit provided to the class and award reasonable attorneys' fees considering that benefit. In determining the value of this "claims-made" class action settlement, the court should consider its actual or anticipated value to the class members, not the maximum amount that hypothetically could have been paid to the class. The court should also consider engaging in a "cross-check" analysis to ensure that the fees are reasonably proportional to the benefit received by the class members.

## BACKGROUND

### I.  Rhapsody faces hurdles navigating the pre-Music Modernization Act compulsory licensing copyright regime.

Rhapsody International (now rebranded as Napster) offers music for digital streaming. Rhapsody—like other online music services such as Apple Music or Spotify—must pay royalties both to the owners of the copyrighted musical compositions (as in this case) and to the owners of the copyright in the particular sound recording of that composition. *See Johnson v. Copyright Royalty Bd.,* 969 F.3d 363, 367–68 (D.C. Cir. 2020).

Before 2018, Rhapsody had two paths to get a license to play (or "copy and distribute" in copyright parlance) copyrighted music: (1) it could directly negotiate a voluntary license from the copyright owner, or (2) it could obtain a "compulsory license" through the procedures set by the Copyright Act. *See* 17 U.S.C. § 115 (2010) (amended 2018). This compulsory licensing scheme required Rhapsody to serve a "notice of intention" on the copyright owner within thirty days after copying the work and before distributing it––or, if the copyright owner could not be identified, to file that notice with the Copyright Office. *Id.* § 115(b)(1).

But this compulsory licensing system became unworkable in the digital music streaming era. Rhapsody and other streaming services offer not only popular songs but also millions of other, often obscure, copyrighted songs. They thus struggled to serve or file a notice of intention for every one of the millions of works available on their services. *See generally* Kenneth J. Abdo & Jacob M. Abdo, *What You Need to Know About the Music Modernization Act*, Ent. & Sports Law., Winter 2019, at 5, 6.

In early 2016, David Lowery and other named plaintiffs sued Rhapsody on behalf of a putative class of copyright owners whose musical compositions were played on the streaming service. The plaintiffs asserted that Rhapsody had infringed their copyrights by reproducing and distributing their musical compositions without obtaining a voluntary or compulsory license to do so.

## II.    The legal landscape begins to shift in the copyright world.

By the time the plaintiffs sued, Rhapsody had been negotiating with the National Music Publishers Association (NMPA) to resolve the same copyright conundrum stemming from the antiquated compulsory licensing system. Rhapsody and the NMPA eventually reached a settlement. To receive payment under that settlement, copyright owners had to waive their right to make claims in this lawsuit against Rhapsody. Otherwise, the copyright holders would be double-dipping and receiving compensation from two settlements.

By April 2018, Rhapsody had informed the plaintiffs in this lawsuit about this NMPA settlement. It advised them that copyright holders of around 98% of the musical works available on its streaming service had opted to participate in the NMPA settlement, "effectively decimating" the putative class in this lawsuit. In other words, it became clear by April 2018 that this lawsuit would not yield much compensation, even if the plaintiffs prevailed.

### III.    Rhapsody and the plaintiffs agree on a settlement that results in barely $50,000 in monetary relief to the class.

The parties devoted significant hours and resources to this case, but they focused on reaching a settlement rather than substantively litigating the claims. Within weeks after the plaintiffs filed their complaint, the parties stayed the litigation to pursue settlement. Except for a handful of discovery disputes and a motion to dismiss that was never decided, settlement talks dominated the parties' dealings.

In January 2019, Rhapsody and the plaintiffs finally executed a settlement agreement. Rhapsody denied liability for copyright infringement but agreed to pay class members for musical compositions played on its streaming service. In turn, the plaintiffs agreed that Rhapsody would pay a maximum of $20 million on class members' claims. But probably because the NMPA settlement had gutted the potential class, very few class members submitted claims for this settlement. In the end, Rhapsody paid only $52,841.05 to satisfy class members' claims.

The settlement agreement also required Rhapsody to establish an Artist Advisory Board with an annual budget of at least $30,000 to advance both parties' goals of protecting artists' rights and promoting Rhapsody's business.

The agreement did not require Rhapsody to make any other changes to its licensing practices: the Music Modernization Act (MMA) took care of that. *See* 17 U.S.C. § 115(d) (2018). While the parties litigated this case, Congress altered the legal landscape for licensing of copyrighted musical compositions when it enacted the MMA in October 2018. Recognizing the cumbersome nature of the compulsory licensing system, the MMA allows

digital music providers to obtain a blanket license. *Id.* One blanket license allows them to copy and distribute all musical compositions available for compulsory licensing. *Id.* § 115(d)(1)(B)(i). No longer must they scamper to obtain thousands or millions of compulsory licenses.

### IV.    The district court awards over $1.7 million in attorneys' fees.

Under Rule 23 of the Federal Rules of Civil Procedure, parties must seek the court's approval of a class action settlement as well as any request for attorneys' fees for class counsel. Fed. R. Civ. P. 23(e), (h).

Our circuit allows two ways to determine attorneys' fees awards in class actions: (1) the "lodestar" method and (2) the "percentage-of-recovery" method. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (en banc). Under the lodestar method, the court multiplies the number of hours reasonably spent on the case by a reasonable hourly rate. *Id.* Though the lodestar amount is presumptively reasonable, the court can then apply a positive or negative multiplier to that amount to ratchet the attorneys' fees up or down, depending on various factors. *Id.* at 571–72. By contrast, the percentage-of-recovery approach provides attorneys a percentage of the total settlement fund or amount claimed by the class. *Id.* at 570. The typical benchmark for the percentage-of-recovery approach is 25%, but a court can—as in the lodestar method—adjust that benchmark up or down. *Id.*

Here, the plaintiffs' counsel calculated their fee request using the lodestar method and arrived at an approximately $2.1 million figure. They then requested a 2.87 multiplier, claiming that they achieved "exceptional" results in a "difficult" and "complex" case. In all, the plaintiffs' counsel

asked the court to award them over $6 million in attorneys' fees.

The district court tasked the magistrate judge with evaluating the fees request. The magistrate judge first reduced the lodestar to $1.7 million, noting that almost 20% of the hours spent on the case were unreasonable or improperly block-billed. She then rejected the requested 2.87 multiplier, and instead applied a negative 0.5 multiplier to the lodestar, given the minor benefit to the class. She concluded that the class action settlement provided $358,903.77 in benefit to the class: besides the $52,841.05 paid to the class members, the magistrate judge included settlement administration costs of $251,400.72, class representative enhancement awards and travel reimbursements of $11,500, the Artist Advisory Board's annual budget of $30,000, and litigation costs of $13,162. After applying the negative 0.5 multiplier, the magistrate judge recommended awarding about $860,000 in fees to the plaintiffs' counsel.

The district court accepted the magistrate judge's lodestar calculation of $1.7 million but rejected her recommendation to apply a 0.5 negative multiplier. Stating that "no bright-line rule" exists to determine whether the "lodestar should be cross-checked against the claimed amount (here, $52,841.05) or the total amount of the cap placed on possible recovery (here, $20,444,567)," the district court declined to place a value on the benefit to the class. Instead, it concluded that it would apply no multiplier—positive or negative—to the lodestar amount, balancing two competing factors: "In an effort to find a sum that adequately reimburses Plaintiffs' counsel for the work they performed, but without the claimed amount [$52,841.05] coming even close to the agreed-upon cap for

the settlement [\$20 million], the Court finds that no multiplier at all would be the most appropriate measure." With that, the district court awarded over \$1.7 million in attorneys' fees.

This appeal followed. We have jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

We review a district court's attorneys' fees award for abuse of discretion and the factual findings supporting such an award for clear error. *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021).

## ANALYSIS

The district court's fee award is not reasonable under Rule 23, given that the \$1.7 million fee award is more than *thirty times* larger than the amount paid to class members. On remand, the district court must justify any fee award it makes by comparing it to the benefit provided to the class. In evaluating the benefit to the class, the district court must disregard the illusory \$20 million settlement cap and focus instead on the approximately \$50,000 paid to class members, along with any other benefits to the class. We also encourage the court to cross-check the fees against the benefit to the class and ensure that the fees are reasonably proportional to that benefit. That this is a copyright case makes little difference—attorneys' fees awarded under the Copyright Act must still be reasonably proportional to the benefit to the class.

**I.      The district court erred in approving \$1.7 million in fees because this award is unreasonable given the small benefit to the class.**

District courts must ensure that attorneys' fees awards in class action cases are reasonable. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). When evaluating reasonableness, a district court must mainly consider the benefit that class counsel obtained for the class. *Id.* at 941–42. It must also provide an adequate explanation for a fee award to facilitate appellate review, detailing "how it weighed the various competing considerations" supporting the award. *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 739 (9th Cir. 2016). In particular, district courts awarding fees must expressly consider the value that the settlement provided to the class, including the value of nonmonetary relief, and explain how that justifies the fee award. *In re Bluetooth*, 654 F.3d at 943–45.[1]

---

[1] We recognize that assigning a precise dollar amount to the class benefit may prove difficult where—unlike here—the relief obtained for the class is "primarily injunctive in nature and thus not easily monetized." *See In re Bluetooth*, 654 F.3d at 941. In such cases, the district court's assessment of the litigation's success will have to be more contextual than in a case like this one in which the fees-to-results ratio is readily calculated. *See id.* at 941–42; *cf. Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1055 (9th Cir. 2019) (holding that, where the value of injunctive relief is too difficult to quantify, courts should exclude it from a common-fund calculation and instead consider it as a factor when determining what percentage of the fund is an appropriate award).

### A. The district court must calculate the settlement's actual value to the class to assess the reasonableness of the fees.

The district court erred in failing to calculate the class action settlement's benefit to the class members. It acknowledged the glaring disparity between the amount paid to the class ($52,841.05) and the hypothetical settlement cap ($20 million), but did not resolve which number to consider, concluding instead that "there is no bright-line rule" governing this question.

We hold that courts must consider the actual or realistically anticipated benefit to the class—not the maximum or hypothetical amount—in assessing the value of a class action settlement. In *Kim*, we held that a district court must compare the reasonableness of a fee award against the amount anticipated to be paid based on existing claims (which was $45,000 in that case), not the maximum payable amount (which was $6 million). 8 F.4th at 1181–82. We thus reversed a fee award because "the district court should have considered the amount of anticipated monetary relief based on the timely submitted claims," rather than the maximum amount that the defendant would have paid if all class members had submitted claims. *Id.* at 1181.

On remand, the district court should disregard the theoretical $20 million settlement cap and instead start with the $52,841.05 that the class claimed. This rule is especially important when the class redemption rate is low. The plaintiffs' counsel had to know that the redemption rate—and thus the ultimate class recovery—would be extremely low here: there was no realistic possibility that the actual payout to class members would approach anywhere near $20 million, given that the NMPA settlement foreclosed many

class members from making claims here.  Any other
approach would allow parties to concoct a high phantom
settlement cap to justify excessive fees, even though class
members receive nothing close to that amount.  District
courts have the responsibility to guard against such an
outcome.  *See Chambers v. Whirlpool Corp.*, 980 F.3d 645,
658–59 (9th Cir. 2020).

The plaintiffs cannot rely on *Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980), to argue that the hypothetical $20
million settlement cap supports the district court's fee award.
In *Boeing*, the Supreme Court held that a fee award to class
counsel could be calculated based on the entire settlement
fund—even if part of the fund went unclaimed—because the
defendant had been held liable for a "sum certain" of about
$3 million no matter how many class members exercised
their right to make a claim.  *Id.* at 478–79 & n.5.  But the
Court suggested that this holding would not apply if the
amount of the defendant's liability had been "contingent
upon the presentation of individual claims." *Id.* at 479 n.5.

Here, Rhapsody is not liable for any "sum certain" but
only for the claims submitted.  The settlement agreement
established Rhapsody's willingness to pay up to $20 million
if *necessary* to satisfy class members' claims.  But Rhapsody
never agreed to pay class members a penny more than the
amount that class members claimed.  Because Rhapsody's
monetary liability remained contingent upon the amount
claimed by the class, we join the Seventh Circuit in holding
that *Boeing* does not govern a case like this one in which the
defendant "did not surrender a sum certain that inured to the
collective benefit of the class." *See Camp Drug Store, Inc.*

*v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 832 & n.22 (7th Cir. 2018).**[2]**

In short, on remand the district court should value the settlement by starting off with the $52,841.05 payment to the class members, not the hypothetical $20 million cap.[3]

## B. On remand, the district court should consider cross-checking its lodestar calculation to ensure that it is reasonably proportional to the benefit provided to the class.

We have "encouraged courts to guard against an unreasonable result by cross-checking their [attorneys' fees] calculations against a second method." *In re Bluetooth*, 654 F.3d at 944–45 (comparing fees calculated using the lodestar method against a reasonable fee amount calculated using the percentage-of-recovery method). A cross-check can "assure that counsel's fee does not dwarf class recovery." *Id.* at 945 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 n.40 (3d Cir. 1995)). If the cross-check reveals that a contemplated fee award exceeds 25% of the benefit to the class, the court should take

---

[2] The settlement agreement reinforces this conclusion: the plaintiffs promised not to "claim in any manner" that the settlement cap established a fixed fund to benefit the class. *See Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (deferring to settlement agreement terms in evaluating reasonableness of fee award).

[3] Unlike the magistrate judge, the district court did not expressly consider whether or how to include settlement administration costs, the Artist Advisory Board, and class representative travel reimbursements and enhancement awards in its calculation of the benefit to the class. Nor do the parties address those issues in their argument before this court. We thus do not decide how the district court should treat these costs on remand.

a hard and probing look at the award because this disparity may suggest that the fee amount is unreasonable. *See id.*; *Johnson v. MGM Holdings, Inc.*, 943 F.3d 1239, 1242 (9th Cir. 2019).

Here, no matter the final valuation of the settlement, the $1.7 million lodestar amount will greatly exceed 25% of the value of the settlement. Indeed, it will be multiple times the settlement's value. And that is a major red flag that signifies that lawyers are being overcompensated and that they achieved only meager success for the class. *See In re Bluetooth*, 654 F.3d at 942 (stating that district courts should "award only that amount of fees that is reasonable in relation to the results obtained" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983))).

Except in extraordinary cases, a fee award should not exceed the value that the litigation provided to the class. *Cf. Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (Posner, J.) ("[T]he presumption should . . . be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel."). No rational person would spend, say, $1 million in legal fees—and endure the hassles and headaches of litigation—to recover only relief that is a small fraction of that amount. Likewise, it is unreasonable to award attorneys' fees that exceed the amount recovered for the class, absent meaningful nonmonetary relief or other sufficient justification.

It does not matter that class action attorneys may have devoted hundreds or even thousands of hours to a case. The key factor in assessing the reasonableness of attorneys' fees is the benefit to the class members. *See In re Bluetooth*, 654 F.3d at 942. Here, the benefit to the class is meager. Not

only that, class counsel harbored little realistic probability that they would recover substantial compensation for the class. It was clear by April 2018 that Rhapsody's NMPA settlement would likely gut the putative class here so that this lawsuit would yield only minimal financial recovery (and the plaintiffs never argued that their lawsuit somehow precipitated the NMPA settlement). And it was obvious that no meaningful nonmonetary relief would be possible by October 2018 at the latest when Congress passed the MMA. In short, an award of $1.7 million in attorneys' fees is unreasonable and not proportional to the benefit received by the class.

## II. Even if the district court awards fees under the Copyright Act, it must consider whether the award is proportional to the benefit to the class.

The plaintiffs try to wave away our case law on reasonable attorneys' fees by arguing that courts have recognized that fees do not have to be proportional to the monetary recovery in some cases.

True, we have held that attorneys' fees awarded in civil rights cases need not be strictly proportional to monetary damages. Even though damages in civil rights cases are often small, we have held that these lawsuits can provide considerable benefit to society through nonmonetary relief such as "ending institutional civil rights abuses or clarifying standards of constitutional conduct." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209–10 (9th Cir. 2013). Civil rights fee-shifting provisions thus "ensure that lawyers would be willing to represent persons with legitimate civil rights grievances." *See City of Riverside v. Rivera*, 477 U.S. 561, 578–79 (1986) (plurality opinion). In other words, civil

rights cases can provide significant nonmonetary and injunctive relief to plaintiffs.

But "the policies served by the Copyright Act are more complex, more measured, than simply maximizing the number of meritorious suits for copyright infringement." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994). Therefore, because the "goals and objectives" of the statutes are "not completely similar," the Supreme Court has rejected an analogy to a civil rights fee-shifting statute when interpreting the Copyright Act's fee-shifting provision. *Id.* at 522–25.

We do the same here. District courts awarding attorneys' fees in class actions under the Copyright Act must still generally consider the proportion between the award and the benefit to the class to ensure that the award is reasonable. We recognize that a fee award may exceed the monetary benefit provided to the class in certain copyright cases, such as when a copyright infringement litigation leads to substantial nonmonetary relief or provides a meaningful benefit to society. But this is not such a case.

## CONCLUSION

We reverse the district court's attorneys' fees award of \$1.7 million. On remand, the district court should determine the class action settlement's actual value to the class members and then award attorneys' fees proportional and reasonable to the benefit received by the class.

**REVERSED AND REMANDED**.